# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Criminal Action No. 17-cr-00150-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EMILIO JOHN HERNANDEZ,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

---

This matter is before the Court on Defendant Emilio Hernandez's Motion to Suppress (Doc. # 16), wherein he argues that Denver Police Department (DPD) Officer Christopher Valko violated his Fourth Amendment right to be free from unreasonable search and seizure when he searched Mr. Hernandez's car without a warrant on April 1, 2017, and discovered a firearm under the driver's seat. Based on the Parties' written arguments, the evidence presented at the hearing, and applicable legal authority, the Court finds that Officer Valko's search of the vehicle was unconstitutional and, therefore, grants Mr. Hernandez's Motion to Suppress.

### I.    BACKGROUND

On April 1, 2017, Mr. Hernandez was arrested for possession of a weapon by a previous offender. The events giving rise to his arrest, as recorded on Officer Valko's body camera, are as follows:

Officer Valko was driving eastbound on a busy section of I-70 when he clocked Mr. Hernandez driving in excess of the speed limit. Officer Valko initiated a lawful traffic stop. Mr. Hernandez produced a valid Colorado ID card but was unable to produce a driver's license. The passenger was also unable to produce a valid driver's license. Officer Valko then discovered that Mr. Hernandez's license was suspended. Officer Valko prepared citations for speeding and driving under a suspended license. While doing so, he told his fellow cover officer that he was "going to do a proof and get them out of here." He added, "I'll just park and lock the car I guess. I don't know. They can't drive."

Officer Valko then returned to Mr. Hernandez's vehicle and asked him to step out of the car and away from traffic to sign some "paperwork." After completing that paperwork, Officer Valko asked Mr. Hernandez if there was anyone who could pick up the car, since neither Mr. Hernandez nor the passenger was able to drive it. Mr. Hernandez responded "yeah." He then gestured toward Pecos Street and made a number of inaudible comments. Before Mr. Hernandez finished responding, however, Officer Valko cut him off and asked, "Is there anything in the car that shouldn't be?" Mr. Hernandez responded, "No." Officer Valko then asked if he could search the car. Officer Valko twice told Mr. Hernandez that he had a right to refuse the search. Mr. Hernandez's responses are inaudible but the parties agree that he did not consent to Officer Valko's search.

Officer Valko then made the statement, "You know, most guys would tow that car since you can't be driving it," and again asked, "Is there anything in there that I'm going

2

to find?" Mr. Hernandez responded, "No." Officer Valko then proceeded to search the car. He looked on the front passenger seat, next opened and looked in the glove compartment, and then opened and looked in the center console. He flashed his light in the back seat. Finally, he reached under the driver's seat where he found a loaded firearm, which Mr. Hernandez later admitted was his.

In his motion to suppress, Mr. Hernandez disputes the legality of Officer's Valko's search, primarily arguing that Officer Valko's search was for no other reason than to conduct a criminal investigation, i.e. look for contraband — which requires either consent or a warrant. The Government responds that Officer Valko's search was a lawful inventory search pursuant to established DPD policies and procedures, adding that, even if the search was unconstitutional, the firearm inevitably would have been discovered pursuant to these policies. The Government also contends that Mr. Hernandez has no standing to object to the search.

Naturally, the Court first discusses the issue of standing.

## II. STANDING TO CONTEST THE SEARCH

"Fourth Amendment rights are personal and cannot be claimed vicariously." *United States v. Valdez Hocker*, 333 F.3d 1206, 1208 (10th Cir. 2003). "The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000). This "standing" question centers on the "classic Fourth Amendment test: whether the defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to

recognize that expectation as objectively reasonable." *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (internal quotation marks omitted). When, like here, the defendant is not the registered owner of the car that was subjected to the search, although he "need not submit legal documentation showing a chain of lawful custody from the registered owner to himself," he nonetheless "bears the burden of establishing that he gained possession from the owner or someone with authority to grant possession." *Valdez Hocker*, 333 F.3d at 1209. He must advance evidence establishing a link between himself and the registered owner. *Id; see also United States v. Arango*, 912 F.2d 441, 445–46 (10th Cir. 1990) (denying standing to defendant who borrowed the vehicle from a person who was not the registered owner and who provided no evidence linking the lender to someone with a lawful possession of the vehicle); *United States v. Betancur*, 24 F.3d 73, 77 (10th Cir. 1994) (same); *United States v. Martinez*, 983 F.2d 968, 973 (10th Cir. 1992) (same).

Testimony elicited at the hearing establishes that Mr. Hernandez has standing to maintain the instant motion. Specifically, Mr. Hernandez testified that the car's registered owner, Rena Grant, gave him permission to use it. Defendant testified that he traveled to South Dakota days before his arrest to visit his then-girlfriend Rainbow Grant, who is the niece of Rena Grant. He added that, while there, Ms. Grant gave him permission to borrow her car "to run [his] family errands" in Colorado before returning to South Dakota. Mr. Hernandez testified extensively regarding his use of the car for these "family errands," adding that he felt responsible for the car as if it was his own and

thoroughly explaining his legitimate possessory and privacy interests in its contents. The Court finds Mr. Hernandez to be credible on this issue.

Mr. Hernandez's testimony is further supported by Officer Valko's testimony that Rena Grant was indeed the registered owner of the vehicle. Mr. Hernandez also presented a recorded jail conversation between him and Ms. Grant, wherein they discuss her car and his use of it. At no point in that conversation did Ms. Grant insinuate that Mr. Hernandez had taken her car without permission or was otherwise unauthorized to use it. The Government's argument that Defendant stole the vehicle is dubious and unpersuasive; it is not supported by any evidence in the record or testimony at the hearing. To the contrary, the Court concludes that Mr. Hernandez sufficiently established not only that he had permission to use the vehicle from someone with authority, but also, that he had a legitimate privacy interest in the vehicle's contents at the time of Officer Valko's search.

### III.   THE SEARCH

"Searches conducted outside the judicial process without prior approval by judge or magistrate are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 1556 U.S. 332, 338 (2009). Among the well-defined exceptions to the warrant requirement is an inventory search. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). "It is common practice for police to conduct an inventory of the contents of vehicles they have taken into their custody or are about to impound." *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir 2003). These are not treated as investigative searches because they

serve three administrative purposes: "the protection of the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (internal citations omitted).

Although inventory searches need not be supported by a warrant or probable cause, they are restricted in other ways. First, they "are reasonable only if conducted according to standardized procedures." *United States v. Haro-Salcedo*, 107 F.3d 769, 772 (10th Cir. 1997). Second, "[t]he policy or practice governing inventory searches should be designed to produce an inventory." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Third, the search cannot be investigatory in nature but must instead be used only as a tool to record the defendant's belongings to protect the police from potential liability." *United States v. Edwards*, 242 F.3d 928, 938 (10th Cir. 2001). An inventory search conducted for the sole purpose of investigation, i.e. to uncover contraband, is not constitutionally permissible. *United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir. 2010).

Officer Valko's search fails all three criteria. First, the search was not conducted according to standardized procedures. DPD policies governing impound and inventory searches require as follows:

> a. Officers shall make out an Impounded/Recovered Vehicle Report, DPD 224, for each vehicle towed and shall list all articles left in the vehicle. They shall sign the report in the presence of the tow truck driver, who shall acknowledge same by their signature. Only spare tires, jacks, chains, etc., shall be left in any vehicle being towed to the Impound Facility.

6

> b. All articles such as clothing, blankets, cameras, hand tools, and any other personal property shall be removed, inventoried, and then delivered to the Property Bureau for safekeeping. Officers will not remove keys from a vehicle when impounding, unless absolutely necessary. If keys are removed, disposition is to be shown on the Impounded/Recovered Vehicle Report, DPD 224. See OMS 206.04(2).

(Doc. # 18-1 at 6.) The DPD Operations Manual further states that the officer shall "inventory and secure all personal property" in the towed vehicle and shall "complete an inventory list" of it. (*Id.* at 3.) The officer shall remove from the car items with obvious value and deliver them to the Property Bureau for safekeeping. (*Id.*) Officer Valko testified at the suppression hearing that he was aware of the above-mentioned policies and that he was properly trained in them.

Yet, Officer Valko took none of the actions required by the policy. He did not fill out an Impounded/Recovered Report, nor did he create an "inventory list" of the items in the car. Although it is undisputed that Mr. Hernandez's shoes, clothes, and cell phone were in the vehicle, Officer Valko did not inventory or remove any of those items. Officer Valko testified that he did not inventory the shoes and clothes because they had no value. When questioned about why he did not inventory the cell phone, he testified that "it was transported to District One station with the defendant." However, it is clear from the body-camera video that the cell phone was on the front driver's seat at the time of the search. Moreover, Mr. Hernandez testified that he was not given his phone that night. He also testified that his personal property, including his wallet and jewelry were given to him when he was released from custody, but his phone was not among the personal items returned to him. Ultimately, the only items Officer Valko removed from

7

the car during his alleged inventory search were the firearm he found underneath the driver's seat, some bullets, and a glass pipe — i.e. contraband.

When questioned about why he did not complete an inventory list in accordance with the DPD Policy, Officer Valko testified that he was conducting a search for dangerous items and contraband for safety purposes, rather than to preserve personal property. He testified that such a search is common practice among DPD officers who plan to either park and lock or impound a vehicle. To the extent that this is true, the Court finds that such a practice does not comply with DPD's own operations manual and would constitute an unconstitutional search because it goes far beyond a search "designed to produce an inventory," the second restriction governing inventory searches. *Wells*, 495 U.S. at 4.

Third, all of the evidence, including the body-camera video and Officer Valko's testimony indicates that Officer Valko was conducting his search of the vehicle for the sole purpose of investigation, not to inventory items in preparation for impoundment. He originally testified that he was looking for "contraband or safety issues," although he later added that he was looking for "anything valuable or anything that would pose an immediate threat." Prior to beginning his search, he repeatedly asked Mr. Hernandez if there was anything illegal in the car and even told Mr. Hernandez that he was going to search the car for contraband.

Perhaps the most telling testimony from the suppression hearing was Officer Valko's repeated statements that, at the time he searched the car, he had still not determined that he was going to tow the vehicle — that he did not make that

determination until *after* he conducted the search and arrested Mr. Hernandez. The following exchange took place:

>   DEFENSE COUNSEL: So the primary reason the car was towed on April 1 was because the driver was taken into custody?
>
>   OFFICER VALKO: At the time that these forms were completed, yes.
>
>   DEFENSE COUNSEL: Mr. Hernandez wasn't arrested until after the gun was found?
>
>   OFFICER VALKO: That's correct.
>
>   DEFENSE COUNSEL: So [the] decision to tow the car was made after Mr. Hernandez was arrested?
>
>   OFFICER VALKO: That's correct.
>
>   . . .
>
>   DEFENSE COUNSEL: You just testified the decision to tow the car was made after Mr. Hernandez was in custody?"
>
>   OFFICER VALKO: That was the definitive decision, yes.

Based on this testimony, and other evidence in the record, it is clear that Officer Valko's search was not an inventory search of a car that he had decided to impound.[1] Officer Valko's later attempts to justify his search as a proper inventory search of a vehicle that needed to be removed from the highway is nothing more than post hoc rationalization.

---

[1] The Court also notes that that Officer Valko's police report falsely states that, after issuing the citation and proof of service, he informed Mr. Hernandez "that the vehicle would need to be towed due to its location on the highway and that an inventory search would be conducted." (Doc. # 24-1.) The Court has watched the video multiple times and Officer Valko makes no such statement.

9

Accordingly, the Court concludes that Officer's Valko's search was an unlawful, pretextual search for evidence that cannot withstand a Fourth Amendment challenge.

## IV.  <u>**INEVITABLE DISCOVERY EXCEPTION**</u>

The Government nonetheless argues that, even if Officer Valko's search was unconstitutional, "discovery of the evidence was inevitable because the vehicle had to be removed from the side of the busy interstate highway" by way of impoundment or a park-and-lock procedure — both of which require an incidental search.  (*Id.* at 3–5.)  The Court disagrees.

"The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it." *United States v. Cunningham*, 413 F.3d 1199, 1203 (10th Cir. 2005) (citation and quotation marks omitted).  The burden rests on the government to prove "by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." *Id*.

The Government's argument hinges on the Government demonstrating, by a preponderance of the evidence, that no alternatives existed to police removal of the car from the highway.  The Government has not met this burden.  It is undisputed that when Officer Valko asked Mr. Hernandez if there was anyone that could come and retrieve the car, Mr. Hernandez responded, "yeah."  It is also undisputed that Mr. Hernandez gestured toward his home and made a number of subsequent statements, including "I can take it home."  The Government argues that, in making this statement, Mr. Hernandez was suggesting that he would drive the car home himself.  The Government

10

adds that Mr. Hernandez provided no other options for the removal of the car from the highway. Mr. Hernandez however contends that he attempted to provide options but that he "never got that far . . . [he] never got the opportunity" because Officer Valko "cut him off."

Having thoroughly reviewed the video, the Court agrees with Mr. Hernandez that Officer Valko did not give him the opportunity to fully respond to the question. At the suppression hearing, Mr. Hernandez testified, "There was numerous people I could have called . . . if I got the chance [to] call." He added, "If it really really came down to it, if they needed somebody to pick it up I could ask my mom to do it." Mr. Hernandez also stated that he could have arranged for a private tow. The Court finds Mr. Hernandez credible on this issue. Indeed, his testimony is supported by (1) text messages from him to his niece, Reyna Gallegos, stating "I'm pulled over, u might have to come"; (2) Mr. Gallegos's testimony that both of her sisters and her mom were available to go help Mr. Hernandez; and (3) the undisputed fact that Mr. Hernandez had sufficient funds on his person to afford a private tow.

Based on the foregoing, the Government has not demonstrated, by a preponderance of the evidence, that a search of the vehicle pursuant to impound or a park and lock was inevitable. Thus, the inevitable discovery exception does not apply.

## V.    CONCLUSION

Accordingly, the Court GRANTS Mr. Hernandez's Motion to Suppress (Doc. # 16) and suppresses all evidence obtained as a result of the April 1, 2017, unconstitutional search of the car.

DATED: November 7, 2017    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge